Thank you, your honors, and may it please the court. My name is T.W. Brown, and I'm here today to represent the appellate, Christian Winchel. Seated at council table is my colleague, Jerry Beard, who drafted the briefs in this case. This appeal concerns a restitution order, but at the outset, the court must determine whether Mr. Winchel's challenge is barred by his appeal waiver. When Mr. Winchel pleaded guilty, he agreed to waive his right to appeal his conviction and sentences, but reserved the right to bring a direct appeal of a sentence exceeding the statutory maximum punishment. Before we move on to the nature of Mr. Winchel's appeal and whether it does in fact challenge a sentence in excess of the statutory maximum punishment, it may be helpful to define the statutory maximum in general and with regard to this case. In general, a statutory maximum is the harshest penalty the text of a law permits and a hard limit on a sentencing court's discretion. Now, rather than set the statutory maximum amount of restitution at a specific number, Congress has instead limited a sentencing court's authority to award restitution by declaring only certain losses compensable. In this case, Title 18, United States Code, Section 2259, sets the statutory maximum at the full amount of the victim's losses, which the statute goes on to define as those losses approximately caused by the defendant's offense conduct. The text of Section 2259 thus sets two hard limits on a sentencing court's discretion. First, the court cannot award restitution beyond the losses established by the victim, and second, the court cannot award restitution beyond those losses approximately caused by the defendant's offense conduct. Mr. Brown? Yes, Your Honor. I doubt anybody is going to challenge the idea that nobody bothered to cite or apply the Paroline case in the district court. I have a couple of process questions here. Number one is, how the heck did that happen? I noticed Mr. Winchell had not one but two counsel at sentencing, one of whom, Marlo Katadu, is a very well-recognized— Dallas criminal defense lawyer. And number two, why bother to go to the merits before we've discussed the appeal waiver? Your Honor, with regard to the first question, I can't speak to the failure of the attorneys below to address the Paroline issue, and I was planning to address the appeal waiver before moving on to the merits. Thank you. Thank you, Your Honor. With regard to that appeal waiver, I think this Court's published decision in Chemical and Metal Industries Incorporated resolves that issue in Mr. Winchell's favor, and I believe this Court's unpublished decisions in D'Souza, Jones, Gunselman, and Campbell provide persuasive authority suggesting the same result. In each of those cases, the defendant argued that the district court ignored one of the hard limits on its discretion to award restitution. Those challenges did not contest the facts found by the district court, but instead challenged the district court's statutory authority to award a specific amount of restitution based on the undisputed factual findings below. CMI provides a pretty clear example of this. There, Section 3664 set the statutory maximum for restitution at the full amount of the defendant's losses, as determined by the court. The court did not make any finding regarding the amount of losses in that case, but nevertheless ordered $2 million in restitution. On the face of the record, the court's legal analysis was flawed, and the defendant's challenge necessarily implicated the statutory maximum. Similar results, the court reached similar results in D'Souza and Jones. In D'Souza, the record established $1,000 of loss, but the defendant, pardon me, the court ordered $11,000 in restitution. Well, let me, I mean, you know, of course we're bound by the chemical and metal industries in a way that we're not bound by unpublished opinions, but what is the logical difference between applying this theory to any dollar of restitution in excess of the amount allowed by law on the one hand, and the appellate waiver that we normally enforce where the defendant says the court overlooked an applicable provision of the sentencing guidelines and therefore the sentence was illegal and in violation of law? What's the difference? Your Honor, the difference is that a challenge to restitution necessarily implicates the statutory maximum, whereas a challenge to improper guideline finding does not. But it's also in violation of law because otherwise that's what Booker and Gaul tell us. That's true, Your Honor, and I think ultimately that would go to the plain air standard of review and whether this court should exercise its discretion to— Well, no, it goes to the appellate waivers. I mean, we said you can make whatever argument you want to about the illegality of the sentencing, but you waive anything. Anyway, I made my point, but— Well, Your Honor, I think each case is going to turn on the terms of the specific appeal waiver. In this case, Mr. Winchell reserved the right to bring an appeal of the sentence in excess of the statutory maximum. Now, I think CMI resolves the issue regarding the appeal waiver in Mr. Winchell's favor because the same analysis or a similar analysis applies here. Section 2259 limits the compensable losses to those proximately caused by the defendant's offense conduct. Here, the district court ordered Mr. Winchell to pay for the entirety of one victim's losses despite the fact that the record establishes that he could not have caused all of those losses on his own. The reason the record establishes that is because Paroline requires a district court applying Section 2259 to take into account defendants who have previously been convicted for possessing the same images. In this case, the demand letter submitted by the victim in the Cindy series of images noted that there had been numerous convictions in the past and that they expected that there would be additional convictions in the future. Given the existence of these past defendants, we know that Mr. Winchell's possession of those images could not have caused the entirety of her $1.4 million in losses. I'd also note that Mr. Winchell is not contesting the factual sufficiency of the district court's findings because there are no findings to contest. The district court did not engage in the Paroline analysis. Instead, we're arguing that the record establishes that the district court's order exceeded the limits set by Congress on its discretion to order restitution. Accordingly, I think the court should follow CMI and allow this appeal to proceed. Briefly, I'd like to address the cases cited by the government. Those cases involve a different sort of argument on appeal and one that does not challenge the district court's authority to order restitution under the relevant statute. For instance, the Frazier opinion cited by the government in its recent Rule 28J letter is easily distinguishable. Typically, restitution is limited to the losses caused by the offense of conviction. However, the defendant can agree in a plea agreement to compensate a victim for additional losses, and that's allowed under the relevant statute. In Frazier, the defendant agreed in his plea agreement to compensate victims for losses caused by relevant conduct. The court made factual findings regarding that relevant conduct, and then it ordered restitution consistent with those findings. On appeal, the defendant wanted to fight about those factual findings, but that's not the same kind of argument we're making here, and it's not the same kind of argument the court dealt with in CMI. The next question on appeal involves plain error review. The government concedes that there was error in this case, that the error was clear and obvious, and that the error affected the defendant's substantial rights. The only issue left to decide is the fourth prong, and that's whether this court should exercise its discretion to reverse because the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Now, unfortunately, much of this court's jurisprudence regarding that fourth prong doesn't provide much analysis regarding the facts of each individual case, but I think two opinions from last year help resolve this case in Mr. Winchell's favor. The first one is Guy and Cruz, and in that case, this court extracted a meta-rule from other cases involving the fourth prong where it instructed the panel to consider the particular facts of the case along with the degree of the error and then to compare those factors to other similar cases involving similar errors that also turned on the fourth prong. The most similar case we have is the United States v. Jimenez case. It's an unpublished decision, but it was issued last year. There, the defendant was convicted for receipt of child pornography, and there was a demand letter requesting $125,000 for five different victims. The court imposed—pardon me, the guidelines in that case suggested a life sentence, but the defendant's statutory maximum term in prison was 20 years. He received a 20-year sentence, and the court imposed the requested restitution without engaging in a parent line analysis. This court reversed on plain error review, and with regard to the fourth prong, it noted that it would exercise its discretion to correct the error because the error potentially resulted in a restitution award greater than the loss approximately caused by the defendant. Jimenez dovetails with a line of authority where this court has been willing to exercise its discretion under the fourth prong to vacate statutorily or constitutionally improper awards of restitution, typically finding that such awards implicate the fairness or integrity of judicial proceedings. Those cases include Austin, Maturin, Inman, and Hickman. And again, while the analysis in any individual case is typically not lengthy or involved, the idea seems to be that because these statutes set strict limits on restitution, the excessive award—and excessive awards cannot be excused by harmless error. When we allow restitution order in excess of the statutory limits to stand, we're allowing it in totally illegal sense to stand, and we're allowing the district court to go beyond what the statute allows. For practical purposes, Mr. Brown, isn't it also true that we're engaging in fiction because it is highly unlikely that Mr. Winchell will ever see the light of day or repay a single much more than a dollar or two of restitution even to his own little relative? Your Honor, that may be true, although I would note that in the plea agreement and the judgment, the court noted that although there was a payment plan that would kick into effect once Mr. Winchell was released, that payment plan did not keep the government from immediately collecting any amounts owed under the restitution. I'd also note that the government points out the length of his sentence, and while, of course, it is a factor for the court to consider, it is not a factor that has changed this court's opinion in previous cases involving constitutionally or statutorily improper awards of restitution. And in the plea agreement, the government attempted to inoculate Mr. Winchell's sentence against future challenges involving motions for a lower sentence if the law were to change, and Mr. Winchell excised that portion of the agreement, which means in the future, along the same lines as we've seen in crack cocaine cases, Mr. Winchell could apply for a lower sentence, and perhaps that might be granted. Now the final question is what remedy to order or the scope of the remedy, and I think this court's decision in Villalobos and Jimenez provide the same answer, and I think it's the correct answer for this case as well, which is to remand with instructions to conduct approximate cause analysis and to allow the government to introduce additional evidence if need be. In Villalobos, the general rule is that the government, if it had an opportunity to present evidence below, should not have an opportunity to present evidence again on remand, but Villalobos and Jimenez seem to carve out an exception to this rule in cases like this where the harm from the failure to present sufficient evidence in yours to a blameless victim rather than the government. It's also true that the court probably would be unable to conduct a paroline analysis below without additional information. And so you don't have any objection to the government being allowed to conduct this paroline analysis with regard to all the victims? No, Your Honor. I think that would be fine. All right. Your Honor, that's all I have. Your Honors, that's all I have. I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. May it please the Court. Amber Grand for the United States. Mr. Winchell's argument depends entirely on his claim that the restitution order here exceeds the statutory maximum. However, if you look beyond his nomenclature to the substance of his claims, it becomes clear under the facts of this case and this Court's existing precedent that the appeal waiver does bar the claims here today. It's actually most helpful to look at what he doesn't claim. He does not claim that amounts were awarded that exceeded the temporal limitation of his offenses. He does not claim that victims were included in the restitution award that were not covered in the offenses of conviction. He does not claim that the types of damages awarded were improper under Section 2259. And he does not claim that the victims here did not actually sustain the losses that they claimed. What he does instead is challenge the district court's exercise of its jurisdiction to apportion harm to him on the range of permissible damages. That type of challenge, that type of challenge to his exercise of discretion, was waived voluntarily and knowingly by the appeal waiver in this case. Make no mistake, Mr. Winchell received the full benefit of his bargain here. Not only did the government agree to forego additional charges based on his conduct, but count four of the indictment was dismissed at sentencing. Count four involved an addition possession count of prepubescent child pornography, and those counts actually detailed video images that portrayed sadistic conduct. That would have added an additional 20 years' exposure on top of a much larger restitution award because you're not dealing with still images instead of a video. So that count was completely dismissed, greatly reducing his exposure at sentencing. On top of that, Mr. Winchell argued at sentencing that he should receive a downward variance because he had pled guilty. He had saved the government and the victims. To be clear, you're no longer talking about the appeal waiver. Now you're saying we shouldn't exercise our discretion to vacate a man because the sentence was an appropriate sentence. Is that what you're saying? It's relevant to both, I would say. In this case, the court looks first at whether that waiver was knowingly involuntary, and then it looks at the plain language of the waiver as applied to the claims to determine if waiver occurred. There's no contention in the record that his waiver was involuntary or unknowing, but the fact that he did plead guilty and receive the benefits of that bargain, of course, play into the fourth-prong analysis as well. I don't think we even have to get there. I think this case ends with the fact that his appeal waiver directly covers the claims that he makes in this case. And if you look at United States v. Frazier, United States v. Pena, you have very similar claims. Those were fraud cases, not child pornography cases. But you have claims by the defendants that— But in Pena, you had a different appeal waiver provision, didn't you? You did, but you also have this court say even if there was a reservation for the statutory maximum, his claims would not fall within that reservation of rights. But in that same opinion, this court didn't explain what it meant when it said that, did it? There was no explanation in that opinion for that statement. That's correct. All right. That is correct. However, if you look at the substance of— And that's an unpublished opinion. That is correct, as is Frazier. There does appear to be a line—two lines of diverging cases. And in the first line, you have these claims by defendants who, after the fact, want to challenge the district court's exercise of discretion in how it allocates harm at sentencing. The second line, where the appeal waivers have been found to not apply— and I'm talking about chemical and metal, Sharma— or you have a complete absence of evidence to support the loss calculation. That's not the case here. Not only do we have two victim impact statements that were attached to the PSR supplement, but we have a case agent that testified at sentencing about Mr. Winchell's conduct as it pertained to the specific victim seeking restitution. That testimony went to a number of parallel factors. It went to the number of images that he possessed. It went to whether they were full-sized images or thumbnails. It went to whether he traded those images in exchange for a benefit. He, in fact, achieved VIP status on this child pornography website because he uploaded so much child pornography to it in exchange for accessing additional materials. Those factors, even if there wasn't an explicit Paroline analysis by the district court on the record, that is evidence in support of the loss amount that was entered in the restitution order, and it removes this case from the umbrella of chemical and metal and Sharma and Jones, and it puts it under the umbrella of Frazier and Pena because now you're talking about there's evidence. The district court heard that evidence. It considered the evidence. It adopted the PSR, and it made this determination. And that's the exercise of his discretion, not his exceeding the statutory authority for that award. Ms. Graham, I am absolutely befuddled as to why nobody cited or mentioned Paroline. The district judge, one of the most able ones in the circuit, may have nodded, but what excuses the government's failure here? Your Honor, the government, although not specifically raising Paroline, did have victim impact statements that took into account causation and did present agent testimony on those factors. We do concede that the lack of an explicit analysis was likely error under Jimenez. Judge Fitzwater did say on the record at page 219 that he was going to forego a lengthy explanation of the order because he wanted to spare Mr. Winchell further embarrassment, that he was happy to elaborate if the parties wanted them to, and nobody took advantage of that offer. So he adopted the PSR and sentenced him accordingly. However, he did acknowledge that there was an additional explanation possible and didn't want to further embarrass Mr. Winchell in that particular proceeding. Would a PSR, would the obligations of a probation officer in restitution normally include citing the applicable law like Paroline, or would they be more confined to just the facts? It does. I'm sorry, Your Honor. Go ahead. The probation officer does have the obligation to include that analysis, but the victim impact statements here, the Vickie series, the government does concede in its brief, did not make it into the paginated record, but it undergoes a detailed Paroline analysis. The victim number one in this case, Jane Doe one, was the production victim, where it's the exact type of case mentioned by Paroline where the full amount of harm would be attributable to the defendant in this case. There's no apportionment necessary. I don't, I mean, you know, the likelihood that this restitution is going to change for two of the victims seems quite small to me. No, but I was asking whether, legally speaking, a PSR will acknowledge, you know, restitution in the 2259 cases depends on the Supreme Court's findings in Paroline or something like that. I'm just asking you whether the PSR normally gets into legalities like that. It will get into that apportionment analysis, yes. However, the probation officer will also convey the restitution requests of the victims, even if it is not necessarily in line with Paroline. It's the obligation of the prosecutor and the probation officer to convey to the court what the restitution request is, and then it is an issue between the parties in the court as to whether apportionment of that award is proper and what the analysis would be. But, yes, that would be an appropriate consideration to be included in the PSR in the first instance. Right. Thank you. So the government does... You concede, in terms of the Cindy series victim, you concede that the evidence does satisfy the Paroline requirement, don't you? The government concedes that the explanation, at a minimum, was insufficient. It's more in line of a concession as to a procedural error and a failure to explain because we don't have that explanation. I don't know what went into the district court's determination. In this case, it is certainly an atypical award, but this is an atypical defendant. Judge Fitzwater observed that it was one of the top five worst defendants he had seen. You have over 20 years of conduct that was taken into consideration. You have a terabyte of data that was involved that couldn't possibly be analyzed by the agents in this case, and you have the victimization of members of his own family. So we don't know what the district court took into account. I would also point out that the Cindy series letter specifically said it did not include damage amounts for future therapy, education expenses, and that it was, therefore, not a sum total of all of her damages. And so the district court's allocation of harm is unclear because we don't have that explanation, but I can't speak definitively to the propriety of that award given the facts that we do have on the record. And that's what brings this case under the appeal waiver. This is not a case where we have zero evidence in support of his determination. This is a case where the court exercised its discretion, and because of that, the bargain for agreement to waive his rights applies in this case, and he's not allowed to bring these issues up for the first time on appeal. He had every opportunity to challenge this award if he thought that it was unfair. The plea agreement specifically references restitution a number of times. Judge Fitzwater addressed it at the rearrangement hearing. The PSR was filed with the restitution amounts in it. The supplement to the PSR was filed with the victim impact statements attached. The only objection lodged was to the grouping of the counts in the PSR. Judge Fitzwater asked if there were any further objections to the PSR at the sentencing hearing. There was no objection at that time or after sentence was entered or after he offered to further explain the outcome in this case. That was Mr. Winchell's opportunity to raise any issues that he had with the calculation here. Anything beyond that was waived by the appeal waiver, and it should be enforced by the court in this case. If the court does want to look beyond the substance of the claims and get past the appeal waiver, the government does maintain that this is not a case that dictates the exercise of discretion under the fourth prong. Mr. Winchell bears the burden of demonstrating that it's proper to exercise discretion here. He's not met that burden. He's essentially collapsed the third and the fourth prongs and said, we have this big obvious error, so you should reverse. Escalante Reyes and Onda Verde Tinoco require more. There is a separate and distinct fourth prong analysis where we have to analyze if this specific case, the facts of the case and the degree of the error require an exercise of this court's discretion to reverse. The degree of the error in this case, as a failure to explain, does not itself require reversal. We should have had a more definitive explanation of the analysis of the restitution award on the record. The government concedes as much. But a failure to explain, in essence a procedural error, does not require this court to intervene on plain error. And we've gone through the facts of this case. We've gone through how egregious the offensive conviction is. I don't have to go into those facts again, but they weigh heavily against exercising discretion under the fourth prong. So when the Supreme Court says you have to do a parallel analysis, you're saying, but you really don't have to? No, Your Honor. It is required to do the parallel analysis, but in this case we don't have a complete absence of those facts. We do have some evidence through the case agent's testimony at sentencing and through the parallel analysis in at least one of the victim impact statements. Parallel analysis would not apply to the production victim impact statement. So you have one of the three where we have a potential parallel error. But even as to that award, we had evidence presented by the government at sentencing that went to the parallel factors. So even though we're admitting the failure to explain occurred in this case, this is not the case where you have a complete absence of parallel evidence such that it flies in the face of the Supreme Court's decision and would require reversal. It's certainly helpful to have additional guidance as well as to what quantum of an explanation would be appropriate. But again, that's not the type of error that requires this court to reverse the award in this case. Well, basically, Ms. Graham, aren't you just saying that if Judge Fitzwater had once alluded to Paroline, there wouldn't be any doubt about the appeal waiver, right? I don't think we even have to get to his reference. Well, I agree that him mentioning Paroline would remove any possibility that this was somehow a statutory error because then you would at least have concrete record evidence that he considered the factors. But I think the outcome is the same where you have the record evidence, even if you don't have an explicit reference to Paroline. And this court said in Sharma that where you don't have an explicit determination by the trial court, this court is permitted to look at the record as a whole to see if there's a basis to affirm the award. So we're not limited to his explicit Paroline explanation when we can look beyond that to see that there was evidence presented at sentencing, evidence attached to the PSR supplement that supports the award in this case. The threshold question here, being the applicability of the appeal waiver, is easily resolved under the line of cases under Frazier and Pena, given the nature of Mr. Winchell's claims. Should the court choose to look beyond the appeal waiver and resolve this case on the merits, the government maintains that Mr. Winchell has not met his burden under the fourth prong. If your honors don't have any additional questions, the government would ask the court to either dismiss the appeal as waived or to affirm. Thank you, Counselor. Roboto. Thank you, Your Honors. I just have a few points I'd like to make. First, with regard to the two lines of authority, the difference in these cases is easily explained with reference to the nature of the challenges made by the defendant. In Frazier and Pena, the defendants were fighting about the factual findings the district court made, whereas in CMI, D'Souza, Jones, and these other cases, they're not fighting about the facts. The factual record is undisputed. They're arguing that the district court exceeded its authority to award restitution based on those undisputed facts. Now, the government brought up another issue that came up in its briefs, which is an attempt to distinguish this case from CMI by pointing out there is a complete absence of evidence regarding the amount of loss. In CMI, there was a dead body. The victim had died. The problem was not that there was no evidence of loss. It was that the district court had made no findings regarding loss. As a result of that, its award of restitution exceeded the findings which are necessarily tied to the statutory maximum. I'd also note that in D'Souza, there was record evidence of $1,000 of loss. So there was some evidence of loss, but the restitution order exceeded that loss. And again, the court found that that type of challenge involves a challenge to the statutory maximum. There was also evidence of loss in Jones. So there was not a complete absence of evidence. In Jones, a case involving counterfeit drugs, there was evidence that the pharmaceutical companies had sustained an actual loss once those counterfeit drugs were placed into commerce. However, this court found that despite that, the defendant's challenge with an appeal waiver similar to here was allowed to proceed and that the district court which had ordered restitution in line with the potential loss, which would be relevant for guidelines calculations, ultimately the court found that that was not a basis to distinguish this case from CMI. Pardon me, that case, Jones. The government also brought up the issue of whether there's an implicit Paroline analysis on this record, and there clearly is not because the letter does not describe Paroline at all and, in fact, cites two pre-Paroline case law. Now, as noted in Jimenez, this court has not yet set out a procedure by which district courts should apply Paroline, but some analysis is required and no analysis took place here. And with regard to the fourth prong, I'd just note that in this case's original opinion, it noted that Jimenez was materially indistinguishable from this case. It's important to note the degree of error here is likely to be well in excess of the degree of error in Jimenez. There, the district court only ordered $125,000 in restitution, equally apportioned amongst five victims. Here we have one victim whose aggregate losses are $1.4 million. Mr. Paroline should have to pay the amount of loss that his offense proximately caused. We know that he was not involved in the creation of these images. We also know that there are other defendants who have conducted or been convicted for the exact same offense conduct, such that the degree of excess will likely be well above $125, which was found sufficient for this court to exercise its discretion in Jimenez. That's all I have, Your Honors.  Thank you, counsel.